UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Orleans International, Inc.,

      Plaintiff,

v.                                                          Case No.  15-13525

Mistica Foods, L.L.C., *et. al.*                            Honorable Sean F. Cox

      Defendants.

_____/

## OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION IN PART & DENYING IN PART

In this contract dispute, Orleans International, Inc. ("Plaintiff") asserts that Mistica

Foods, LLC and Edward Bleka (collectively "Defendants") have refused to accept and pay for

over one million pounds of beef products.

This matter is currently before the Court on Defendants' Partial Motion to Dismiss

Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendants' Motion to Dismiss raises the following five issues: (1) whether Plaintiff has stated a

valid breach of contract claim against Defendant Bleka; (2) whether Plaintiff has failed to plead

its fraud claim with requisite specificity pursuant to Rule 9(b); (3) whether Plaintiff can proceed

on its fraud claim when it is based upon the same promises that form the basis of its breach of

contract claim; (4) whether Plaintiff's fraud claim is barred by the economic loss doctrine; and

(5) whether Plaintiff's promissory estoppel claim is barred by the existence of an express

contract covering the same subject matter.  The motion has been fully briefed by the parties.

For reasons more fully developed below, the Court shall **GRANT Defendants' Motion**

1

**to Dismiss in part and DENY in part**. Specifically, the Court shall GRANT the motion to the extent that it shall dismiss Plaintiff's Fraud in the Inducement/Fraudulent Misrepresentation Count (Count II). The Court shall DENY the motion in all other respects.

## BACKGROUND

### I.    Factual Background

Plaintiff is an importer and wholesaler of meat products for sale and distribution to customers throughout the United States. (Am. Compl. ¶ 6). Defendant Mistica Foods is a producer and distributor of meat products throughout the United States. *Id.* at ¶ 7.

On or about December 12, 2014, Plaintiff received an email entitled "Raw Material Requirements" from Defendant Bleka. *Id.* at ¶¶ 8-9. Attached to the email was a spreadsheet that detailed over two million pounds of beef product, which Defendants sought to purchase from Plaintiff each month for an entire year. *Id.* at ¶ 11. Negotiations between Plaintiff and Defendants continued through January 5, 2015. *Id.* at ¶¶ 12-13. On that date, Defendant Bleka sent another email to Plaintiff. *Id.* at ¶ 13. In it, Bleka provided Plaintiff with updated projections for 2015. *Id.* Based on these projections, the total beef to be purchased by Defendants was reduced from 2,138,032 pounds to 1,682,928 pounds. *Id.* Bleka's email detailed each month's requirements for the entire year of 2015.

On January 6, 2015, Plaintiff sent Defendants an email confirming the parties' agreement. *Id.* at ¶ 15. Plaintiff specified that it would supply certain of Defendants' beef requirements for the 2015 year. Plaintiff confirmed the volume ordered and the price per type of beef. *Id.* at ¶ 15. Plaintiff additionally mentioned that it would attempt to assist Defendants in gaining grass fed beef, however, Plaintiff clarified that per Defendants' instruction, grass fed

2

beef would not impact the agreement between the parties.  Ex. 4 to Am. Compl.

Based on the agreement outlined above, Defendants accepted delivery of, and payed for, beef products purchased by Plaintiff for approximately five months.  Am. Compl. ¶ 18.  The first delivery of purchased product was made on January 17, 2015 and the last accepted delivery was on May 26, 2015.  *Id*.

The dispute between the parties stems from Defendants' alleged failure to accept the quantity of beef product that it had specifically ordered.  Plaintiff claims that on May 20, 2015, Defendant Bleka was provided with a "status of delivery to date vs. purchases of requirements." *Id*. ¶ 19.  Plaintiff further maintains that while it continued to purchase beef products to meet the requirements specified in the parties' agreement, Defendants' acceptance of such products continued to fall behind schedule.  *Id*. ¶ 20.  Consequently, on June 16, 2015, Defendant Bleka sent Plaintiff a text message, wherein he represented that:

> I will never want to leave you in a bad spot I will use every pound so you do not
> get hurt like I always did with in reason and if you want to talk call me

(Ex. 7 to Am. Compl.).  Despite Bleka's assurances, Defendants' acceptance of purchased product continued to decrease.  *Id*. ¶ 21.  This caused an increase in Plaintiff's product inventory. *Id*.  Plaintiff subsequently cancelled all of Defendants' open orders on July 17, 2015.  *Id*. ¶ 22.

In an attempt to mitigate its losses, Plaintiff began to sell some of the inventory purchased pursuant to its contract with Defendants.  *Id*.  While Plaintiff was able to sell approximately 926,000 pounds of product, it sustained a direct economic loss of $20,831.04.  *Id*. ¶ 23.  Had Defendants met their contractual obligations as to the products sold, Plaintiffs alleges that it would have realized a $436,267.06 profit.  *Id*.  Additionally, Plaintiff is incurring costs related to the transportation and/or storage of approximately 42,000 pounds of unsold inventory.

*Id.* ¶ 24.  Even if  Plaintiff is able to sell its current product, it alleges that it is likely to sustain an economic loss of $26,099.  *Id.*  Had Defendants fulfilled their obligations as to this product, Plaintiff asserts it would have earned a profit of $21,781.20.  *Id.*  Apart from the sold and unsold products, Defendants allegedly ordered and agreed to purchase an additional 285,000 pounds of product for delivery through December 2015. *Id.* ¶ 25.  Plaintiff expected to realize a $171,513.36 profit on this product.  *Id.*

## II.    **Procedural Background**

Plaintiff originally filed this action in Oakland County Circuit Court on September 8, 2015.  On October 7, 2015, Defendants removed the case to this Court based upon diversity jurisdiction.  (D.E. No. 1).  Shortly thereafter, on October 30, 2015, Defendants filed a motion to dismiss Plaintiff's complaint.  Plaintiff subsequently filed an amended complaint on December 11, 2015.  (D.E. No. 14, Am. Compl.).  Plaintiff's amended complaint alleges claims against Mistica Foods, LLC and Edward Bleka.  Plaintiff asserts the following three counts: Count I – Breach of Contract; Count II – Fraud in the Inducement/Fraudulent Misrepresentation; and Count III – Promissory Estoppel.  (Am. Compl.).  Plaintiff's amended complaint seeks a judgment against Defendants in an amount in excess of $75,000.

Defendants filed their partial motion to dismiss on January 15, 2016.  (D.E. No. 16, Def.s' Br.).  Defendants seek dismissal of Count I against Defendant Bleka, and dismissal of Counts II and III in their entirety.

On March 18, 2016, Defendants filed a counter claim against Plaintiff.  (D.E. No. 22, Def.s' Counter Claim).  In it, Defendants seek declaratory judgment against Plaintiff declaring that an enforceable agreement to purchase certain beef products pursuant to an agreed upon

4

schedule did not exist.  Additionally, Defendants assert a promissory estoppel claim or, alternatively, a breach of contract claim.  Defendants seek judgment in excess of $75,000 based upon these counts.  Plaintiff filed its partial motion to dismiss Defendants' counter claim on April 29, 2016.  (D.E. No. 27).  The Court shall hear argument as to this motion at a later time.

The Court entertained oral argument as to Defendants' motion to dismiss on May 5, 2016.

## STANDARD OF REVIEW

When reviewing a motion to dismiss under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept its factual allegations as true. *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  However, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory* v. *Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).  It is the plaintiff's obligation to bring forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Twombly*, 550 U.S. at 557.  Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *LULAC* v. *Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

## ANALYSIS

5

**I.       Challenges to Plaintiff's Breach of Contract Claim (Count I)**

In their first argument, Defendants maintain that Plaintiff has improperly named Defendant Bleka as a defendant in its breach of contract claim.  Defendants argue that Plaintiff's amended complaint fails to "allege that [Plaintiff] entered into a purported agreement with Bleka, individually."  (Def.'s Br. at 3).  Defendants point out that the sales confirmation documents attached to Plaintiff's amended complaint "only refer to Mistica Food, LLC."  While this issue appears to be a close call, the Court shall DENY Defendants' request at this stage in the pleadings.

After reviewing the facts alleged in the light most favorable to Plaintiff, the Court believes Plaintiff's claims against Defendant Bleka should at least withstand dismissal at the 12(b)(6) stage.  Here, Plaintiff's amended complaint refers to Defendant Mistica Foods and Defendant Bleka collectively as "Mistica" or "Defendants."  Additionally, Plaintiff's amended complaint specifies Defendant Bleka's alleged conduct throughout the formation of the contract. Plaintiff alleges that "Defendant Ed Bleka contacted Plaintiff in regard to Plaintiff supplying Defendant Mistica's needs for certain beef products for the calender year 2015."  (Am. Compl. ¶ 8).  Plaintiff alleges that throughout negotiations with Defendants, Defendant Bleka provided Plaintiff with various emails containing projected beef requirements for the 2015 year.  *Id*. ¶¶ 9-13.  Plaintiff then alleges that it sent Defendant Bleka an email confirming the parties' agreement.  *Id*. ¶ 15.  In this email, Plaintiff concluded by stating: "Ed, I feel great about being a part of this new venture for you and your family and only hope to carry on the relationship we have commercially and personally had for over the last 20 years."  *Id*. ¶ 16.  At some point after Defendants began to fall behind on their acceptance of purchased product, Plaintiff alleges that

6

Defendant Bleka affirmatively represented in a text message that: "I never want to leave you in a bad spot I will use every pound so you do not get hurt like I always did with in reason and if you want to talk call me[.]" *Id*. ¶ 20. As described by the above facts, Plaintiff alleges that there existed an express contract between Plaintiff and Defendants. *Id*. ¶ 29.

Construed in Plaintiff's favor, the alleged facts and exhibits are plausibly sufficient to sustain a breach of contract claim against Defendant Bleka individually.

## II.     Challenges to Plaintiff's Fraud Claim (Count II)

Defendants advance the following three arguments to support the dismissal of Plaintiff's fraud claim: (1) Plaintiff's allegations are insufficient to plead a claim for fraud pursuant to Federal Rule of Civil Procedure 9(b); (2) Plaintiff may not proceed on a fraud claim based upon contractual promises; and (3) Plaintiff's fraud claim is barred by Michigan's economic loss doctrine.

The Court shall GRANT Defendants' motion to dismiss Plaintiff's fraud claim on the basis that: it is improperly based upon contractual promises and, alternatively, that it is barred by Michigan's economic loss doctrine. Because dismissal is appropriate pursuant to alternative grounds, the Court need not discuss Defendants' Rule 9(b) argument.

### A.     Plaintiff Has Not Pled Actionable Fraud in the Inducement

Defendants argue that Plaintiff cannot proceed on its fraud claim because it is based upon Defendants' alleged contractual promise to act in the future. (Def.s' Br. at 5). Plaintiff fails to adequately respond to Defendants' argument as to this point.

As a threshold matter, the elements constituting fraudulent inducement and/or fraudulent misrepresentation are well-settled in Michigan: (1) defendants made a material representation;

(2) the representation was false; (3) defendants knew, or should have known, that the representation was false when making it; (4) defendants made the representation with the intent that the plaintiff rely on it; (5) plaintiff acted on the representation; (6) and plaintiff incurred damages as a result. *Foreman v. Foreman,* 266 Mich. App. 132, 142 (2005); *see also Custom Data Solutions, Inc., v. Preferred Capital, Inc.*, 274 Mich. App. 239, 243 (1995).

A plaintiff is entitled to bring a fraud in the inducement action when it is induced into entering an agreement on the basis of false representations. *Rood v. Midwest Matrix Mart, Inc.*, 350 Mich. 559, 564 (1957). Here, Plaintiff argues that it was fraudulently induced to enter into the parties' agreement by Defendants' false representation that they intended to continually meet their payment obligations throughout the 2015 year. (Pl.'s Resp. at 14).

As Defendants correctly point out, however, an action for fraud must generally be conditioned upon a false statement relating to a past or existing fact. *Foreman,* at 143. Accordingly, promises pertaining to the future will not support a claim of fraud since such promises are contractual. *Id.* (quotations and citations omitted). However, a narrow exception[1] to this rule recognizes that an actionable tort can be premised upon a "promise made in bad faith without intention of performance." *Hi-Way*, at 337-38 (citations omitted). Thus, in order for Plaintiff to prevail on its "claim of fraud based on a promise to perform in the future," it must establish that Defendants "had no intention of fulfilling [their] promise *at the time* that it was made." *APJ Associates, Inc. v. North American Philips Corp.*, 317 F.3d 610, 615 (6th Cir. 2003)

---

[1] Neither Plaintiff nor Defendants acknowledge this exception in their arguments. Instead they argue that fraud in the inducement is the exception to the general rule. But in order for fraud in the inducement to be adequately alleged, the misrepresentation must have been made with present intent not to perform. Thus, the Court has taken it upon itself to discuss the appropriate exception.

(emphasis added) (affirming the district court's determination that the plaintiff had failed to establish fraud in the inducement.).

Here, Plaintiff's complaint fails to allege any fact from which the Court could plausibly infer that Defendants had the present intent not to honor their promise to pay at the time the promise was made. In its brief, Plaintiff summarily states that the "essence of [its] Fraud in the Inducement claim is that the defendants did not intend on meeting their obligations to [Plaintiff] when market prices changed and the product ordered was available at a lower price." (Pl.'s Br. at 14-15). To support this allegation, Plaintiff now asserts, for the first time, that Defendants' fraudulent intent can be inferred from the following facts: (1) that at the time Defendants refused to accept delivery of the beef products, "they concocted the excuse that their actions were due to the fact that [Plaintiff] had not supplied 'grass-fed' products..."; (2) that Plaintiff subsequently mitigated its losses by selling its non-grass fed product to Jason Foods; and (2) that Defendants later bought the non-grass fed product from Jason Foods at the lower market price. (Pl.'s Resp. at 16). Plaintiff's cursory argument is flawed for a number of reasons.

First, Plaintiff's amended complaint does not allege any facts relating to Jason Foods.[2] Nor has Plaintiff attached any exhibit to its amended complaint relating to this newly asserted set of facts. The only relevant allegation in Plaintiff's complaint as to this issue states, in part:

> That at the time that Mistica made material representations and promised to purchase and take delivery of... specific meat products... Mistica knew the representation to be false, and did not intend to keep the promise made... in that

---

[2] "As a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed. R. Civ. P. 56." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto..." *Basset v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

> **if/when market conditions become such that the price of similar beef products, similar to those that Mistica agreed to purchase from Orleans, then Mistica would purchase such products from other sources, and not from Orleans**.[3]

(Am. Compl. ¶ 34) (emphasis added).  This speculative and conclusory allegation, on its own, is insufficient to suggest that Defendants' promise to pay was made with a *present intent* not to perform.  Thus, Plaintiff has not alleged facts from which the Court could reasonably infer that Plaintiff's claim falls under Michigan's bad faith exception to the general rule.

Second, even if Plaintiff had included the above facts in its amended complaint, it still fails to raise an inference as to Defendants' intent *at the time* the representation was made.  Plaintiff points to alleged conduct that occurred months after the agreement was entered into.  Evidence of fraudulent intent must relate to the conduct of the actor at the very time of making the representation or almost immediately thereafter.  *See Needa Parts Mfg., Inc. v. PSNet, Inc.*, 635 F. Supp. 2d 646 (E.D. Mich. 2009).  Here, Defendants' alleged purchase of product from Jason foods at the lower market price occurred more than five months after the agreement with Plaintiff was entered into.  These facts are too remote in time to satisfy Michigan's bad faith exception.  At most, these additional facts support the inference that Defendants' intent not to honor their promise developed at least five months after the promise was made.

**B.     Plaintiff's Claim is Barred By The Economic Loss Doctrine**

---

[3] The Court notes that the latter portion of this allegation, as stated, makes no sense.  The Court presumes, from reading Plaintiff's brief, that it should read: "...if/when market conditions become such that the price of similar beef products [**drops**]... then [Defendants] would purchase such products from other sources..."  *See* (Pl.'s Resp. at 15-17)

Defendants correctly maintain that Plaintiff's fraud in the inducement claim faces another obstacle: Michigan's economic loss doctrine. (Def.s' Br. at 8). Plaintiff responds that its fraud in the inducement claim is an exception to the economic loss doctrine. (Pl.'s Resp. at 17-18). Because Plaintiff's fraud in the inducement claim is not extraneous to the contractual dispute, however, the Court finds that it is barred by the economic loss doctrine.

Under Michigan law, the economic loss doctrine bars claims that "arise from a commercial transaction in goods" when the plaintiff's injury is solely economic. *Neibarger v. Universal Cooperatives, Inc*., 439 Mich. 512, 520 (1992). "The economic loss doctrine helps to ensure that contract claims are resolved by contract law," and it "applies regardless of whether the buyer or the seller is the plaintiff..." *Dinsmore Instrument Co. v. Bombardier, Inc*., 199 F.3d 318, 320 (6th Cir. 1999). The Michigan Supreme Court explained that:

> This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts.

*Neibarger*, 439 Mich. at 520-21.

The Michigan Court of Appeals later extended the doctrine to bar a claim of fraud concerning the nature or quality of goods. *Huron Tool v. Precision Consulting Servs., Inc*., 209 Mich. App. 365 (1995). In so doing, however, *Huron Tool* carved out a narrow exception to the economic loss doctrine, which permits a plaintiff to pursue a claim for fraud in the inducement ***if the allegations of fraud are extraneous*** to the contractual dispute. *Huron Tool*, 209 Mich. App. at 374-75 (holding that a "plaintiff may only pursue a claim for fraud in the inducement extraneous to the alleged breach of contract."). *Huron Tool's* reasoning as to this point is

11

instructive: in distinguishing between fraud in the inducement and other kinds of fraud, the court determined that "[w]ith respect to the latter kind of fraud, the misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort." *Id.* at 373.

### 1. Plaintiff's Fraudulent Inducement Claim Is Not Extraneous To The Contractual Dispute

Based on the above, "the key inquiry [here] is whether [Defendants' alleged] misrepresentation is but another thread of fabric in the contract claim or an extraneous misrepresentation that actually induced the party to execute the contract." *Huber v. Crop Prod. Servs., Inc.*, 2007 WL 2746625, *6 (E.D. Mich. 2007).

The facts here are analogous to the facts before the Sixth Circuit in *Dinsmore*. There, the court determined that the economic loss doctrine barred the plaintiffs' fraud in the inducement claim because "the true nature of [the plaintiffs'] action is a claim for breach of contract." *Dinsmore*, 199 F.3d at 321. In coming to this conclusion, the Sixth Circuit reasoned that the defendant's misrepresentations were alleged to have been "made in connection with the making of the contract between the plaintiffs and the defendant" and that the plaintiffs suffered substantial economic losses as a result of entering into the contract. *Id.*

Here, the allegation that Defendants did not intend to keep the promise to purchase specific beef products is not extraneous to the contract. Like in *Dinsmore*, the essence of Plaintiff's fraud in the inducement claim is a claim for breach of contract. Plaintiff is essentially asking the Court to find a fraud in the inducement claim where Defendants merely failed to uphold their side of the agreement. Tellingly, in pleading both its breach of contract claim and its fraud claim, Plaintiff relies on exhibits which admittedly make up the parties' contract.

12

Moreover, Defendants' alleged misrepresentation directly relates to performance of the contract. This is precisely the type of misrepresentation *Huron Tool* established does "not give rise to an independent cause of action in tort."  *Huron Tool*, 209 Mich. App. at 373.

## III.   Challenges to Plaintiff's Promissory Estoppel Claim (Count III)

Defendants argue that Plaintiff improperly brings its promissory estoppel claim because the performance alleged to satisfy the detrimental reliance requirement for a promissory estoppel claim is the same performance representing consideration for a written contract.  (Def.s' Br. at 11-10).  Defendants' argument is premised upon the general rule that a party cannot plead claims of both breach of contract and implied contract.  *See Morris Pumps v. Centerline Piping, Inc*., 273 Mich. App. 187, 194 (2006).  The problem with Defendants' position is that it only serves as a partial recitation of the law as to this issue.  At this stage in the proceedings, the Court shall DENY Defendants' motion to dismiss Plaintiff's promissory estoppel claim.

Under Michigan law, the elements of a promissory estoppel claim are: (1) a promise, (2) that the promisor should have reasonably expected to induce action of a definite and substantial character on the part of the promisee, (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided. *Novak v. Nationwide Mut. Inc*. 235 Mich. App. 675, 686-87 (1999).

Defendants correctly point out that a party cannot recover under a theory of promissory estoppel if an express contract governing the same subject matter exists.  However, Plaintiff responds that it relies on Fed. R. Civ. P. 8(a)(3) to plead each claim in the alternative.  Rule 8(a)(3) makes it possible for a pleader to include "a demand for the relief sought, which may include relief in the alternative or different types of relief."

13

2:15-cv-13525-SFC-EAS   Doc # 29   Filed 05/16/16   Pg 14 of 15   Pg ID 853

Alternatively pleading both express and implied contract claims is permitted when, for example, there is a dispute between the parties as to whether or not an express agreement exists. *Cascade Elec. v. Rice*, 70 Mich. App. 420, 426-27 (1976).  Under such circumstances, a party will not be required to "elect to proceed under one theory or the other," but instead it could seek to recover on the basis of either claim in the event that the trier of fact finds that an express contract did not exist.  *Id.* at 427.

Here, Plaintiffs argue that there exists a dispute as to whether an enforceable contract between the parties exists.[4]  Defendants have failed to cite to any authority, which stands for the proposition that promissory estoppel cannot be pled alternatively in the event that a contract is disputed.  Notably, when presented with this issue at oral argument, Defense Counsel agreed that in the event that a trier of fact concludes a contract did not exist, Rule 8(a)(3) alternative pleading would be appropriate.

---

[4] This is demonstrated by Defendants' motion to dismiss Count I against Bleka, Defendant Mistica Foods' Answer to Plaintiff's amended complaint, wherein Mistica Foods denied the allegation that an express contract existed between the parties, and Defense Counsel's statement at oral argument that the existence of a contract is disputed by Defendants.

**CONCLUSION**

For the reasons set forth above, **IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Amended Complaint is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** to the extent that the Court **DISMISSES** the Fraud in the Inducement/Fraudulent Misrepresentation Count (Count II). The motion is **DENIED** in all other respects.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  May 16, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 16, 2016, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager